IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
CIVIL ACTION NO: 1:22-cv-501

| | | |
|---|---|---|
| NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY, a North Carolina Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | DEFENDANT'S |
| v. | ) ) | MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND |
| STEVEN FICKES, | ) ) | COMPEL ARBITRATION |
| Defendant. | ) ) ) | |

Nearly six years ago, Plaintiff North Carolina Mutual Life Insurance Company ("Mutual") sued numerous defendants, including Port Royal Reassurance Company SPC, Ltd. ("Port Royal"), for investment losses caused by Bradley Reifler, who recently pled guilty to federal wire fraud and agreed to pay restitution of more than twenty million dollars. *U.S. v. Reifler,* 1:20CR512 (M.D.N.C.), DE-94. Port Royal moved to compel arbitration based on the arbitration clause in the parties' co-insurance agreement. In April 2020, this Court granted the motion. Now, Mutual has recycled essentially the same claims against Port Royal's principal, Steven Fickes ("Fickes"), throwing in a claim for piercing the corporate veil. Under well-established Fourth Circuit precedent, the claims against Mr. Fickes are also subject to arbitration and should be dismissed without prejudice.

1

## FACTS

Mutual is a North Carolina insurance company. [DE-1, ¶ 7 (Complaint)]. In or around December 2003, North Carolina Mutual and non-party Max Re, Ltd. ("Max Re") (later succeeded by Markel Bermuda Limited ("Markel")) entered into a Coinsurance Agreement wherein Mutual agreed to cede to Max Re liabilities and obligations with respect to certain of Mutual's insurance policies. [DE-1, ¶ 9]. Through this Coinsurance Agreement, Max Re became the "Reinsurer" of certain "Covered Business." A copy of the Coinsurance Agreement is attached as Exhibit 1. The Coinsurance Agreement attached an Initial Trust Agreement, among other documents. The Coinsurance Agreement contained an integration clause that provided:

> This Coinsurance Agreement, including the Attachments thereto, constitutes the sole and entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof, which are merged with and into this Coinsurance Agreement.

[Ex. 1, p. 16]. The Coinsurance Agreement contained a broad arbitration clause, requiring arbitration of "any dispute or claim arising out of or relating to this Coinsurance Agreement, including its formation and validity." [Ex. 1, p. 9].

In April, 2015, Mutual, Markel, and Port Royal entered into a Novation Agreement, under which Port Royal replaced Markel as the Reinsurer under

2

the Coinsurance Agreement. [DE-1, ¶ 16]. As part of this "novation," Mutual and Port Royal entered into the First Amendment to Coinsurance Agreement (the "Amendment"). [Ex. 2]. Like the original Coinsurance Agreement, the Amendment attached a Trust Agreement. This Trust Agreement is attached to the Complaint as Exhibit A [DE-1-1]. The Trust Agreement was the purported foundation of the contract and tort claims against Port Royal in the 2016 lawsuit, *N.C. Mut. Life Ins. Co. v. Stamford Brook Capital, LLC et al.,* 1:16CV1174, DE-97, and it is likewise the purported foundation of the claims against Fickes now. [*E.g.,* DE-1, ¶¶ 131 (fraud), 191 (breach of contract), 209(d) (piercing the corporate veil)].

The Amendment contains an integration clause that expressly includes and incorporates the attached Trust Agreement as part of the "sole and entire agreement" of the parties:

> This Amendment, including the Attachments thereto and together with the Coinsurance Agreement, constitutes the sole and entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof, which are merged with and into this Coinsurance Agreement as amended by this Amendment.

[Ex. 2, ¶ 2.4]. The Amendment contains a broad arbitration clause, requiring arbitration of "any dispute or claim arising out of or relating to this Coinsurance Agreement, including its formation and validity." [Ex. 2, ¶ 1.7].

3

The Novation Agreement, Trust Agreement, and Amendment were part of a single transaction in which Port Royal replaced Markel as Reinsurer under the Coinsurance Agreement. [Ex. 2, Preamble]. When Mutual sued Port Royal in this Court in 2016, Port Royal moved to compel arbitration based on the Amendment's arbitration clause. *N.C. Mut. Life Ins. Co. v. Stamford Brook Capital, LLC et al.,* 1:16CV1174, DE-191. The Court granted the motion on April 20, 2020. *Id.*, DE-199. The Court agreed that the intent and effect of the Amendment was to "'roll up' several separate agreements—namely, the Coinsurance Agreement, the Trust Agreement, and the Novation Agreement—into one integrated contract." *Id.*, p. 6. Thus, the Court held, the broad arbitration clause in the Amendment required arbitration of all claims "arising out of or relating to" the Coinsurance Agreement, the Trust Agreement, or the Novation Agreement, whether denominated as contract or tort claims. *Id.*, p. 7 (requiring arbitration of claims for breach of contract, fraud, unfair and deceptive trade practices, state and federal RICO violations, and unjust enrichment). And, the Court held, "[w]ere there any doubt, the federal presumption in favor of arbitrability would resolve it." *Id.*

Mutual never filed a claim in arbitration. The Court's Order required the parties to "file a joint report of arbitration every ninety (90) days . . . ." *Id.,* p. 10. The Court specified that "[f]ailure to file such reports may result in dismissal." *Id.* The last such report was filed over 13 months ago on July 13,

4

2021. *N.C. Mut. Life Ins. Co. v. Stamford Brook Capital, LLC et al.*, 1:16CV1174, DE-250.

Instead, on June 30, 2022, Mutual sued Fickes, whom Mutual identifies as the "founder, president, and primary senior manager" of Port Royal. [DE-1, ¶ 2]. Mutual claims that Port Royal is a "mere instrumentality and alter ego of Fickes." [*Id.*, ¶ 4]. The claims against Fickes range from fraud and negligent misrepresentation arising out of alleged duties created by the Trust Agreement [*id.*, ¶¶ 130-46], to breach of the Trust Agreement [*id.*, ¶¶ 190-99], to piercing the corporate veil [*id.*, ¶¶ 206-10 ("Fickes' actions were indistinguishable from those of Port Royal.")]. The claims are virtually identical to the claims asserted against Port Royal, which the Court ordered to arbitration.

On the morning of September 2, 2022, Fickes, through counsel, notified Mutual that he was going to move to dismiss and compel arbitration under the Court's earlier Order and the clear Fourth Circuit precedent permitting non-signatories to enforce arbitration provisions in cases like this one, and offered a stipulation dismissing and compelling arbitration. Mutual has not responded, necessitating the instant motion.

## QUESTION PRESENTED

Is Fickes as a non-signatory entitled to enforce the parties' agreement to arbitrate?

5

**ARGUMENT**

"Arbitration clauses are a subset of forum-selection clauses, which are enforced in this circuit pursuant to a Rule 12(b)(3) motion to dismiss for improper venue. The court may examine evidence outside the pleadings when considering the motion." *Amos v. Amazon Logistics, Inc.*, 2022 U.S. Dist. LEXIS 107260, *4 (M.D.N.C., June 16, 2022 (dismissing Complaint and compelling arbitration), *quoting Grimes v. Gov't Emples. Ins. Co.*, 2019 U.S. Dist. LEXIS 126618, *5 (M.D.N.C., July 30, 2019) (citations omitted).

This Court has already determined that all claims "arising out of or relating to" the Coinsurance Agreement, the Trust Agreement, or the Novation Agreement, whether denominated as contract or tort claims, are subject to arbitration under the arbitration provision in the Amendment. The only issue is whether Fickes, a non-signatory in his personal capacity,[1] is entitled to enforce the arbitration requirement. Under clear Fourth Circuit authority, he is.

*The Fourth Circuit's Tests for Non-Signatory Enforcement of an Arbitration Agreement*

The right of a non-signatory like Fickes to enforce an arbitration agreement against a signatory like Mutual arises out of the doctrine of equitable estoppel:

---

[1] Although Fickes is technically a non-signatory in his personal capacity, he signed the relevant contracts on behalf of Port Royal.

6

> As a general matter, "arbitration is a matter of contract [interpretation] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." It is well-established, however, that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate. One such situation exists when the signatory is equitably estopped from arguing that a nonsignatory is not a party to the arbitration clause. "Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of [another's] signature on a written contract precludes enforcement of the contract's arbitration clause when [the party] has consistently maintained that other provisions of the same contract should be enforced to benefit him."

*Am. Bankers Ins. Group v. Long*, 453 F.3d 623, 626-27 (4th Cir. 2006) (reversing district court's denial of motion to compel arbitration by non-signatory); *see also International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 415-419 (4th Cir. 2000) ("To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act."). The Fourth Circuit has established a test for determining whether equitable estoppel should apply in the arbitration context:

> [E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the …agreement in asserting its claims against the

7

nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005). A year later, in *Long,* the Fourth Circuit summarized the test this way: "whether the plaintiff has asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." *Long,* 453 F.3d at 629.

In addition to this test, the Fourth Circuit has recognized a second, independently sufficient basis for invoking estoppel to permit a non-signatory to enforce an arbitration agreement. "[E]quitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Brantley*, 424 F.3d at 396. Although only one of these tests must be met to permit a non-signatory to enforce an arbitration provision, both are satisfied here.

*The First Test for Equitable Estoppel is Satisfied*

Mutual's claims against Fickes make reference to or presume the existence of the agreements that are "rolled up" into the Amendment containing the arbitration provision. Because of Mutual's pleading of claims

using the incorporation of "foregoing allegations" into each claim, the agreements are not actually mentioned in every claim. However, the Trust Agreement is expressly mentioned in "Count 1—Fraud," which is incorporated in all subsequent claims for relief. [DE-1, ¶¶ 131-32]. For example, Mutual alleges that "Fickes made numerous false representations and concealed material facts that ***as a party to the Trust Agreement and Investment Advisory Agreement***, respectively, he had a duty to disclose." [¶ 131 (emphasis added)]. And again: "***As a party to the Trust Agreement and the Investment Advisory Agreement, Fickes, on behalf of Port Royal,*** also agreed that the Trust Assets would be invested in negotiable and Eligible Assets." [¶ 132 (emphasis added)]. In addition to this reference to the Trust Agreement that is incorporated by reference in every other claim, Mutual actually makes a direct claim for breach of the Trust Agreement against Fickes. [¶¶ 190-99].

Apart from these direct references, all claims presume the existence of the agreements between Mutual and Port Royal, which are governed by the arbitration provision. Mutual identifies no duty of Fickes apart from duties allegedly arising out of those contracts, and Mutual asserts no relationship of Fickes with any of the parties that existed apart from those contracts. In this regard, this case is analogous to *Long,* where all of the duties of American Bankers' Insurance Company, the non-signatory enforcing the arbitration

9

agreement, were created because of a contract to which it was not a party. Thus, even though the plaintiff in that case denominated his claims in tort, there was no duty or other relationship between the parties without the contract containing the arbitration clause. *Long,* 453 F.3d at 630 (reversing denial of motion to compel arbitration: "Each of the Longs' individual claims - interference with contract, securities fraud and negligence, civil conspiracy, unjust enrichment and recission, and violation of SCUTPA - are dependent upon their allegation that ABIG breached a duty created 'solely by [the Note]'").

*The Second Test for Equitable Estoppel is Also Satisfied*

As a second basis for estoppel, Mutual's Complaint raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory (Fickes) and one or more of the signatories to the contract (Port Royal). In fact, Mutual contends that Port Royal is the alter ego and mere instrumentality of Fickes. [DE-1, ¶ 4]. The claims against Fickes are identical to the claims against Port Royal in the earlier case, with the exceptions of the addition of claims against Fickes for negligent misrepresentation and piercing the corporate veil, which are based on identical alleged conduct. This more than satisfies the "substantially interdependent and concerted misconduct" test. In fact, certain opinions in the Fourth Circuit suggest that allegations of agency and piercing the

10

corporate veil like the ones in this case are sufficient to compel arbitration standing alone, when the principal is itself a signatory to an arbitration agreement. *See, e.g., International Paper Co.,* 206 F.3d 411, 416-17; *Barber v. Charlotte Motor Speedway, LLC*, 2014 U.S. Dist. LEXIS 165214, *6-7 (M.D.N.C., Nov. 26, 2014) ("In considering the enforcement of an arbitration agreement by or against a non-signatory, the Supreme Court has noted that "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'"").

*Arbitration in This Case Is Particularly Appropriate*

Arbitration is particularly appropriate in this case. The reinsurance industry is unfamiliar to most citizens in this district who might be called upon to sit on a jury for this case. This dispute involves issues related to standing, ripeness, damages, and contract interpretation in an arcane and unfamiliar area of business and law. The broad arbitration requirement in the Amendment reflects the parties' understanding and agreement that disputes in this context are not best resolved by a jury trial, but by arbitration with selected arbitrators. Thus, granting this motion not only honors the letter of the contract, but the wisdom of its intention.

11

## CONCLUSION

Mutual may not simply recycle arbitrable claims against a fellow signatory to an arbitration agreement into purported claims against that signatory's principal and avoid the arbitration requirement. For the reasons set forth above, Fickes respectfully requests that the Court dismiss Mutual's claims without prejudice.

DATED this 6th day of September, 2022.

Respectfully submitted,

MORNINGSTAR LAW GROUP

By */s/ Christopher T. Graebe*
  Christopher T. Graebe
  NC Bar No. 17416
  421 Fayetteville Street, Suite 530
  Raleigh, NC 27601
  (919) 863-9092
  *cgraebe@mstarlaw.com*

Attorneys for Defendant

CERTIFICATE OF SERVICE AND WORD COUNT

The undersigned hereby certifies that he has this day electronically filed the foregoing Memorandum in Support of Defendant's Motion to Dismiss or Compel Arbitration Pursuant to Fed. R. Civ. P. Rule 12(b)(3), which contains 2,461 words exclusive of certificates and caption, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 6th day of September, 2022.

                                             MORNINGSTAR LAW GROUP

                                             */s/ Christopher T. Graebe*
                                             Christopher T. Graebe, NCSB No. 17416
                                             421 Fayetteville Street, Suite 530
                                             Raleigh, North Carolina 27601
                                             Telephone: 919-863-9092
                                             Fax: 919-882-8890
                                             Email: cgraebe@morningstarlawgroup.com
                                             *Attorneys for Defendant*