# COINSURANCE AGREEMENT

between

## NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY

and

## MAX RE LTD.


EXHIBIT 1

## COINSURANCE AGREEMENT

COINSURANCE AGREEMENT made and entered into as of this 19th day of December, 2003 by and between NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY, an insurer organized and existing under the laws of the State of North Carolina ("Cedent"), and MAX RE LTD., a reinsurer organized and existing under the laws of Bermuda ("Reinsurer").

## WITNESSETH

WHEREAS, Cedent has retained Robert Tookey Associates, Inc. ("Intermediary") to seek a reinsurance proposal for a coinsurance transaction;

WHEREAS, Cedent has agreed to cede to Reinsurer, and Reinsurer has agreed to accept on a coinsurance basis, the liabilities and obligations arising on or after September 30, 2003, with respect to the Covered Business (as hereinafter defined) issued or acquired by Cedent, as more specifically described herein;

NOW, THEREFORE, in consideration of the foregoing and intending to be legally bound, Cedent and Reinsurer mutually agree to the terms and conditions stated herein.

## TERMS AND CONDITIONS

| | |
|---|---|
| COVERED BUSINESS | Cedent's Industrial Life policies as listed in the file "pevresv2.txt" sent via e-mail on November 20, 2003 by Cornelia Herring of Cedent to Art Palmer of Reinsurer, excluding any policies coded as Insurance Type "H" or "T" and excluding any policies with a maturity or expiry date (or date of death) preceding the Effective Date of this Coinsurance Agreement, and inclusive of any paid-up additions. |
| QUOTA SHARE | 100% |
| RETENTION | Cedent represents and warrants that none of the policies in the Covered Business are otherwise reinsured. |
| RECAPTURE | There shall be no recapture under this Coinsurance Agreement. |
| FORM OF REINSURANCE | Indemnity coinsurance of the Covered Business. |

| | |
|---|---|
| EXCLUSIONS/INDEMNITIES | Reinsurer does not participate in and expressly excludes any extra-contractual and other damages and losses (including, but not limited to, fines and penalties levied against Cedent), including, but not limited to, damages and losses resulting from sales and underwriting practices, administrative practices, policyholder services, product design and compliance, licensing, claims payment and premium collection practices, and outstanding regulatory compliance activities. In particular, Cedent's pending settlement of a class action lawsuit ("Maime Page, et al., versus North Carolina Mutual Life Insurance Company") affecting the reinsured policies or any other similar or related lawsuits that may arise in the future, irrespective of whether or not such lawsuits are actually settled, will not affect the calculation of Cedent's obligation to Reinsurer in respect of premium payments per the Indemnity clause below, nor will it affect Reinsurer's obligations with respect to death benefit amounts, each of which (for the purpose of this Coinsurance Agreement) will continue to be administered in accordance with the provisions in the original policy forms. |
| EFFECTIVE DATE | This Coinsurance Agreement shall commence as of 11:59pm, Eastern Standard Time, on September 30, 2003 (the "Effective Date") and, unless earlier terminated in accordance with the provisions hereof, it shall not expire until the last of Cedent's policies as defined in the Covered Business clause herein have been fully discharged or extinguished. |
| INDEMNITY | In exchange for the Net Cash Consideration, Reinsurer will pay or reimburse Cedent for cash death claims, maturity benefits and dividend payments *paid in cash and incurred* on or after the Effective Date; Cedent will owe Reinsurer cash premiums *due and received* by Cedent (including any premiums waived which may not actually be received by the Cedent as a result of any pending or actual settlement of a class action suit and excluding any dividends that are not paid in cash) on or after the Effective Date; and Reinsurer will pay Cedent the Renewal Allowances (as defined herein) related to the Covered Business on or after the Effective Date. |
| REINSURED DIVIDENDS | Reinsurer will indemnify Cedent for paid-up additions (i.e. assume liability for the benefit ultimately due on such paid-up additions), dividends paid in cash, and other dividend |

applications. Cedent does not intend to increase dividend schedules. To the extent that Cedent nevertheless increases dividend scales, Reinsurer's participation in any such increase will be limited to the amount of the increase that is supportable by the emerging performance of the Covered Business relative to the performance during the five (5) years immediately preceding the Effective Date. Such support will be demonstrated (in writing prior to such increase) to the reasonable satisfaction of Reinsurer. For the purpose of such demonstration, it is assumed that the Covered Business is supported at any time by investment-grade fixed income assets that closely match the projected liabilities. In no event shall Reinsurer's indemnification for dividends exceed the actual dividends declared by Cedent with respect to the Covered Business. "Reinsured Dividends" shall mean the amount of Reinsurer's indemnification for dividends as defined herein.

POLICY LOANS                Reinsurer does not participate in and expressly excludes Policy Loans (as defined in Cedent's policies designated under the Covered Business clause herein).

NET CASH CONSIDERATION      The unadjusted net cash consideration as November 21, 2003 is $32.5 million ("Net Cash Consideration"). The Net Cash Consideration must be paid to the Reinsurer in cash by Cedent on the Closing Date. The Closing Date shall be as soon as practicable, but in no event later than 10 Business Days following the execution of this Coinsurance Agreement.

ADJUSTMENTS                 a) The Net Cash Consideration will be adjusted for actual cash flows, including, but not limited to, (i) premium receipts that first became due after the Effective Date, (ii) amounts paid upon policy cancellations after the Effective Date, (iii) payments in cash by Cedent for maturity and death benefits due and incurred after the Effective Date, and (iv) Renewal Allowances, from the Effective Date to the date of the transfer of the reinsurance premium via wire transfer (the "Closing Date"). Interest will be paid on the Net Cash Consideration from the effective date to the Closing Date and on all adjustments to the Net Cash Consideration under this clause a) from the date of the payment giving rise to the adjustment to the Closing Date. The rate will be 6.25% annually.

|  | b) The Net Cash Consideration will also be adjusted to reflect the change in representative interest rates from November 21, 2003 to the Closing Date. The rates will be the USD Swap mid-market rates (N.Y.) as quoted by Bloomberg (USSWAPXX) as of closing on the respective dates. As of closing November 21, 2003, the USSWAP5 rate was 3.56%, USSWAP10 was 4.55% and USSWAP30 was 5.32%. The Net Consideration will be adjusted upwards (downwards) by (i) $1,300 for each basis point decrease (increase) in the USSWAP5 rate, (ii) $2,100 for each basis point decrease (increase) in the USSWAP10 rate, and (iii) $19,000 for each basis point decrease (increase) in the USSWAP30 rate. |
|---|---|
|  | All such adjustments and payments pursuant to paragraphs (a) and (b) above are to be made at the Closing Date or as soon as practicable thereafter, but in no event later than 20 Business Days following the Closing Date. |
| TAXATION | Cedent shall be solely responsible for the payment of any federal excise taxes (FET) or other taxes which may be applicable to premiums, Net Cash Consideration and any adjustments thereto under this Coinsurance Agreement to the appropriate tax authorities. There shall be no deduction to the Net Cash Consideration hereunder for any FET or other taxes due. |
| RENEWAL ALLOWANCES | Reinsurer will pay quarterly renewal allowances ("Renewal Allowances") in respect of the Covered Business, equal to the sum of (i), (ii) and (iii), minus (iv) below. The quarterly Renewal Allowance shall never be negative and any such calculated negative balance shall be carried forward indefinitely with interest at 90-day LIBOR and used to offset against future positive amounts until such balance is depleted. |
|  | (i) A premium allowance of 3.5% of reinsured premiums, i.e. 3.5% of premiums *due and received* by Cedent in each quarter (including any premiums waived as a result of settlement of a class action suit, and excluding any dividends that are not paid in cash), ("Premium Allowance"). |

|  |  |
|---|---|
|  | (ii) A policy allowance shall be equal to one quarter $(1/4^{th})$ of (a) $19.00 per premium paying policy and (b) $4.00 per non-premium paying policy. No Policy Allowance will apply to any policy past its expiration or maturity date ("Policy Allowance"). |
|  | (iii) A reserve allowance equal to one quarter $(1/4^{th})$ of 0.40% of the statutory reserve at the end of each quarter ("Reserve Allowance"). |
|  | (iv) The Reinsured Dividends applied each quarter to reinsured policies with policy anniversary in such quarter, whether paid in cash, deposited with Cedent, applied to premium discounts, used to purchase paid-up additions, or used to purchase one-year term insurance. |
| INTERMEDIARY FEES | To be paid by Reinsurer in accordance with the Fee Agreement by and between Reinsurer and Intermediary. |
| ADMINISTRATION | Cedent continues to perform and maintain full responsibility for all aspects of policy administration and servicing in respect of the Covered Business, including reinsurance reporting. Subject to the Transfer clause below, such administration and servicing shall be in accordance with standards that are no less diligent than industry standards, Cedent's past practices, Cedent's current administrative procedures manual and all applicable laws and regulations. Cedent will do so without regard to the fact that the policies are reinsured. Cedent will comply with the service standards listed in Attachment 1. |
| TRANSFER | To the extent that Cedent does not comply with either (i) the service standards listed in Attachment 1, or (ii) its Reinsurance Reporting requirements, or (iii) any applicable laws, regulations and/or industry standards, then Reinsurer can decide to either: a.) allow Cedent a 90-day remedy period following notification by Reinsurer before deciding whether to transfer the administration to a third party administrator; or b.) assuming such non-compliance is material in the Reinsurer's reasonable discretion as documented in writing by Reinsurer to Cedent, provide notice to Cedent of its exercise of the right to transfer the administration to a third party administrator without any remedy period. In the event Reinsurer decides to exercise |

| | |
|---|---|
| | its option to transfer the administration to a third party administrator, such replacement administrator shall be selected by Reinsurer at its sole discretion, and shall be appropriately licensed to perform its administrative obligations. Cedent shall cooperate in good faith with Reinsurer and its third party administrator to affect such administrative transfer. Reinsurer shall by liable for any fees charged by such third party administrator for the services provided hereunder, and Policy Allowances shall no longer be payable by Reinsurer to Cedent once the administrative services have been transferred, effective as the quarter-end of the date of transfer. |
| REINSURANCE REPORTING | Within fifteen (15) Business Days following the end of each calendar quarter (but preferably sooner), Cedent will provide Reinsurer electronically with a reinsurance accounting statement ("Statement") in respect of that quarter indicating amounts due/from Reinsurer, statutory reserves, seriatim policy valuation extracts (similar in form to the "pevresv2.txt" file), claims detail and any other information reasonably requested by Reinsurer for its financial reporting, risk management and analysis needs. Following Reinsurer's receipt of each such Statement, the parties shall promptly settle any amounts due for the quarter pertaining to that Statement. In addition, on a monthly basis, Cedent will provide Reinsurer with electronic statements measuring the actual administrative performance relative to the measurable standards listed in Attachment 1. "Reinsurance Reporting" shall mean Cedent's reporting requirements as defined herein. |
| BUSINESS DAY | Business Day shall mean any day that is not a Saturday or Sunday or a day on which banking institutions in the State of North Carolina or in Bermuda are generally authorized or obligated to close. |
| REPRESENTATIONS & WARRANTIES | In addition to the representation and warranty in the Retention clause, Reinsurer relies on, and Cedent warrants, the accuracy and completeness of data and other written and verbal information provided by Cedent to Reinsurer (or its due diligence representative Ken Phillips), including but not limited to the information listed in Attachment 2. In view of the fact that Cedent provided most but not all policy forms requested by Reinsurer, Cedent represents that |

the policy forms that were provided are indicative for the Covered Business as a whole. In the event of material deviation from the information provided, the parties agree to consult and re-price in good faith consistent with Reinsurer's pricing of the Covered Business.

Reinsurer represents and warrants that, (i) Reinsurer is duly organized under the laws of Bermuda, (ii) Reinsurer is authorized to enter into and bind this reinsurance transaction, (iii) to Reinsurer's reasonable knowledge, this reinsurance transaction is not in violation of applicable laws, (iv) Reinsurer is solvent as of the date hereof, and (v) Reinsurer's financial strength ratings as of the date hereof are "A-" by A.M. Best and "A" by Fitch.

Cedent represents and warrants that, (i) Cedent is duly organized under the laws of North Carolina, (ii) Cedent is authorized to enter into and bind this reinsurance transaction, (iii) to Cedent's reasonable knowledge, this reinsurance transaction is not in violation of applicable laws, (iv) Cedent is solvent as of the date hereof, and (v) Cedent's financial strength rating as of the date hereof is "B+" by A.M. Best.

**STATUTORY RESERVES**     Cedent further represents and warrants that it shall not, on its own initiative, change (i) the terms and conditions of any policies included under the Covered Business, or (ii) the methods and assumptions used by Cedent to establish the statutory reserves and liabilities held at any date with respect to such policies. Reinsurer, at its sole option, may share proportionately in the financial effect of any change in such terms, conditions, methods or assumptions required at any date on or after the Effective Date by any regulatory authority having jurisdiction over Cedent in the ordinary course of exercising its powers or otherwise required by law, subject in all cases to a financial adjustment mutually agreed upon by the Company and the Reinsurer.

**RESERVE CREDIT**     On the Closing Date, Reinsurer will post security that complies with the state(s) regulations that govern the reinsurance ceded and statutory reserve credit therefor. Specifically, Reinsurer will, in its sole discretion, either:

|   |   |
|---|---|
|   | a) establish a U.S. trust account with Mellon Bank, N.A. (or another bank reasonably acceptable to Cedent), or |
|   | b) provide an evergreen letter of credit from a bank reasonably acceptable to Cedent, or |
|   | c) use a combination of clause (a) and (b) |

Such that the total security provided by the U.S. trust account plus the security provided by letters of credit is at least equal to the Quota Share of the statutory reserves (calculated in accordance with Cedent's past methods and practices and applicable statutes and regulations governing reinsurance credit) secured thereby. Reinsurer will select and manage its total trust assets in accordance with the requirements under North Carolina insurance law and regulations for credit for reinsurance, and will select a third party professional asset manager that is reasonably acceptable to Cedent for this purpose. Cedent shall not unreasonably withhold, condition or delay approval of such asset manager. Reinsurer and Cedent will jointly appoint the third party asset manager as an authorized party to direct and consent to substitutions of assets in the trust, in accordance with the trust provisions. Reinsurer and Cedent will enter into a Collateral Trust Agreement.

TRUST AGREEMENT  A copy of the initial Trust Agreement is included as Attachment 3 hereto.

COLLATERAL
TRUST AGREEMENT  The Collateral Trust Agreement is included as Attachment 4 hereto.

APPLICABLE LAW  This Coinsurance Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to and exclusive of the rules with respect to conflicts of law.

ARBITRATION  As a condition precedent to any right of action hereunder, any dispute or claim arising out of or relating to this Coinsurance Agreement, including its formation and validity, shall be referred to arbitration. Arbitration shall be initiated by the delivery, by mail, facsimile, or other reliable means, of a written demand for arbitration by one party to the other. The arbitration shall be held in New

York, New York or such other place as the parties may mutually agree.

Arbitration shall be conducted before a three-person Arbitration Panel appointed as follows. Each party shall appoint one arbitrator, and the two arbitrators so appointed shall then appoint an impartial Umpire before proceeding. If either party fails to appoint an arbitrator within thirty(30) days after it receives a written request by the other party to do so, the other party may appoint an arbitrator for it. Should the two party-appointed arbitrators fail to choose an Umpire within thirty (30) days of the appointment of the second arbitrator, each arbitrator shall propose three names, of whom the other shall strike two, and the decision shall be made from the remaining two by drawing lots. The arbitrators and Umpire shall be present or former executives or officers of life insurance or life reinsurance companies. The arbitrators and Umpire shall not be under the control of either party, and shall have no financial interest in the outcome of the arbitration.

The arbitrators and Umpire shall interpret this Coinsurance Agreement as an honorable engagement, and shall not be obligated to follow the strict rules of law or evidence. In making their award, they shall apply the custom and practice of the insurance and reinsurance industry, with a view to effecting the general purpose of the Coinsurance Agreement.

The decision of a majority of the Arbitration Panel shall be final and binding, except to the extent otherwise provided in the Federal Arbitration Act. The Arbitration Panel shall render its award in writing. Judgment upon the award may be entered in any court having jurisdiction, pursuant to the Federal Arbitration Act. Unless the Arbitration Panel orders otherwise, each party shall pay: (1) the fees and expenses of its own arbitrator; and (2) an equal share of the fees and expenses of the Umpire and of the other expenses of the arbitration.

| | |
|---|---|
| COOPERATION | The parties shall cooperate fully with one another in the operation of this Coinsurance Agreement, including but not limited to, settlement of any loss payments, provision of data to Reinsurer or its duly appointed representatives, or in relation to the Administration and Transfer clause |

obligations. The parties agree to undertake their respective obligations under this Coinsurance Agreement under a duty of "utmost good faith" and each is under the affirmative duty to report any adverse information with respect to its solvency or with respect to the particular facts that relate to the Covered Business.

INSPECTION OF RECORDS

Reinsurer, or its duly appointed representatives, shall have access to the records of Cedent concerning the business reinsured hereunder for the purpose of inspecting, auditing and photocopying those records, including those pertaining to underwriting, claims processing and administration. Such access will be provided at the office of the Cedent and will be during reasonable business hours.

Provided there is business in force under this Coinsurance Agreement or any claims exist by one party against the other under this Coinsurance Agreement, the Reinsurer's right of access as specified above will be in effect.

OFFSET

Notwithstanding any other rights and remedies of the parties, each party shall have the following rights, without prior notice to the other party:

a) upon any amount becoming due and payable to a party by the other party under this Coinsurance Agreement, to setoff and apply against such amount any and all amounts, in each case whether direct or indirect, absolute or contingent, matured or unmatured, at any time held or owing by it to or for its credit under this Coinsurance Agreement. Each party agrees promptly to notify the other party after any such set-off and application made by it; provided, however, that the failure to give such notice shall not affect the validity of such setoff and application; and/or

b) to recoup damages for amounts owed to a party under this Coinsurance Agreement by the other party from future amounts due to the other party under this Coinsurance Agreement.

INDEMNIFICATION

Reinsurer hereby agrees to indemnify and hold harmless Cedent and its officers, directors and employees from and against any and all demands, actions, proceedings, suits (by

any person, entity or group, including, without limitations, any governmental entity) and liabilities, paid or incurred (including reasonable attorneys' fees), resulting from or arising out of the breach of or failure to perform any of the representations, warranties, duties, obligations, covenants or agreements of Reinsurer contained in this Coinsurance Agreement

Cedent hereby agrees to indemnify and hold harmless Reinsurer and its officers, directors and employees from and against any and all demands, actions, proceedings, suits (by any person, entity or group, including, without limitations, any governmental entity) and liabilities, including without limitation all tax liabilities, paid or incurred (including reasonable attorneys' fees), resulting from or arising out of the breach of or failure to perform any of the representations, warranties, duties, obligations, covenants or agreements of Cedent contained in this Coinsurance Agreement.

This clause shall survive any termination of this Coinsurance Agreement.

NOTICES

All notices and communications hereunder shall be in writing and shall be deemed to have been received within three (3) Business Days after mailing by overnight delivery service, or on the next Business Day if by telefacsimile or by hand. Any written notice shall be by overnight delivery service (providing for delivery receipt), by telefacsimile (followed by telephone confirmation with the intended recipient) or delivered by hand.

All notices or communications with Cedent under this Coinsurance Agreement shall be addressed as follows:

North Carolina Mutual Life Insurance Company
411 West Chapel Hill Street
Durham, NC 27701-3616
Attention: Chief Actuary
Tel.: 919-682-9201
Fax: 919-956-8956

With a copy to:

North Carolina Mutual Life Insurance Company

411 West Chapel Hill Street
Durham, NC 27701-3616
Attention: General Counsel
Tel.: 919-682-9201
Fax: 919-956-8956

All notices or communications with Reinsurer under this Coinsurance Agreement shall be addressed as follows:

Max Re Ltd.
Max Re House
2 Front Street
Hamilton, HM 11
Bermuda
Attention: Executive Vice President, Life & Annuity
Tel.: 441-296-8800
Fax: 441-296-8811

With a copy to:

Max Re Ltd.
Max Re House
2 Front Street
Hamilton, HM 11
Bermuda
Attention: General Counsel
Tel.: 441-296-8800
Fax: 441-296-8811

|  |  |
|---|---|
| SERVICE OF SUIT | This provision is not intended to conflict with nor override the parties' obligations to arbitrate their disputes in accordance with the Arbitration clause. |

It is agreed that in the event of the failure of Reinsurer hereon to pay any amount claimed to be due hereunder, such Reinsurer, at the request of Cedent, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Reinsurer will abide by the final decision of any such Court or, in the event of an appeal, of any appellate court, within the United States, recognized by such Court. Nothing in this Article constitutes or should be understood to constitute a waiver of Reinsurer's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another

Court as permitted by the laws of the United States or of any State in the United States.

Reinsurer hereby designates the CT Corporation System at its offices in New York City as its true and lawful attorney upon which lawful process (or notice of arbitration) may be served in any action, suit or proceeding instituted on behalf of Cedent; provided that in the event that Cedent is unable to serve process directed to Reinsurer upon CT Corporation System at its New York City offices, Reinsurer hereby waives personal service of process or papers in connection with any action, suit or proceeding instituted on behalf of Cedent and agrees that such service may be made by overnight delivery service (providing for delivery receipt) at the address listed for Reinsurer under Notices herein.

The above named CT Corporation System is authorized and directed to accept service of process on behalf of Reinsurer in any such suit.

Further, pursuant to any statue of any state, territory, or district of the United States that makes provision therefor, Reinsurer hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute (or his successor or successors in office) as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of Cedent or any beneficiary hereunder arising out of this Coinsurance Agreement, and hereby designates the above named as the person to whom said officer is authorized to mail such process or a true copy thereof.

INSOLVENCY

Reinsurer hereby agrees that, as to all reinsurance made, ceded or otherwise becoming effective hereunder, the reinsurance shall be payable by Reinsurer on the basis of the liability of Cedent under the reinsured policies, without diminution because of the insolvency, liquidation or rehabilitation of Cedent or the appointment of a conservator, receiver, liquidator or statutory successor of Cedent directly to Cedent or to its conservator, liquidator, receiver or other statutory successor.

It is agreed that any conservator, receiver, liquidator or statutory successor of Cedent shall give prompt written

notice to Reinsurer of the pendency or submission of a claim under any reinsured policy. During the pendency of such claim, Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense available to Cedent or its conservator, receiver, liquidator or statutory successor. The expense thus incurred by Reinsurer is chargeable against Cedent as a part of the expense of conservation, receivership, liquidation or rehabilitation to the extent of a proportionate share of the benefit that accrues to Cedent solely as a result of the defense undertaken by Reinsurer. If two or more assuming reinsurers are involved in the same claim and a majority in interest elect to interpose defenses to such claim, the expense shall be apportioned in accordance with the terms of this Coinsurance Agreement as though such expense had been incurred by Cedent.

ERRORS & OMISSIONS

If any delay, omission, error or failure to pay amounts due or to perform any other act required by this Coinsurance Agreement is unintentional and caused by misunderstanding or oversight, the Company and the Reinsurer will remedy the situation to what it would have been had the misunderstanding or oversight not occurred. The party first discovering such misunderstanding or oversight, or act resulting from the misunderstanding or oversight, will notify the other party in writing promptly upon discovery thereof, and the parties shall act to correct such misunderstanding or oversight.

SUCCESSORS & ASSIGNS

No assignment of rights or delegation of duties of either party under this Coinsurance Agreement shall be effective unless approved in writing by the other party.

EXECUTION & COUNTERPARTS

This Coinsurance Agreement may be executed by the parties hereto in any number of counterparts, and by each of the parties hereto in separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

AMENDMENTS &

| | |
|---|---|
| ALTERATIONS | Any term or condition of this Coinsurance Agreement may be waived at any time by the party that is entitled to the benefit thereof. Such waiver must be in writing and must be executed by an authorized officer of such party. A waiver on one occasion will not be deemed to be a waiver of the same or any other term or condition on a future occasion. This Coinsurance Agreement may be modified or amended only by a writing duly executed by an authorized officer of Cedent and Reinsurer respectively. |
| SEVERABILITY | If any term or provision of this Coinsurance Agreement shall be held void, illegal, or unenforceable, the validity of the remaining portions or provisions shall not be affected thereby. |
| ENTIRE AGREEMENT | This Coinsurance Agreement, including the Attachments thereto, constitutes the sole and entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof, which are merged with and into this Coinsurance Agreement. |

IN WITNESS WHEREOF, the parties hereto have caused this Coinsurance Agreement to be executed by their duly authorized representatives as of the date first above written.

| MAX RE LTD. | NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name: ROBERT J. COONEY | Name: *Charles D. Watts* |
| Title: CEO | Title: SVP - General Counsel |
| Date: DECEMBER 22, 2003 | Date: December 19, 2003 |

## ADMINISTRATIVE SERVICE STANDARDS

| Task | Performance Standard |
|---|---|
| Answering policyholder phone inquiries | Within two (2) business days of inquiry (unless documentation from archived storage is needed) |
| | Within seven (7) business days of inquiry (if documentation from archived storage is needed) |
| | Answer at least 95% of calls offered (abandoned call percentage no more than 5%) |
| Average time incoming calls are on hold | No more than two (2) minutes |
| Answering policyholder correspondence | Within two (2) business day of receipt of request (unless documentation from archived storage is needed) |
| | Within seven (7) business day of receipt of request (if documentation from archived storage is needed) |
| Department of Insurance requests | Answer within seven (7) business days |
| Average time to process changes such as address, beneficiary, and payment mode | Ten (10) business days from receipt of request |
| Average time to process uncontested claims after receipt of all paperwork | Seven (7) business days (90%+ within 14 days) |

**Attachment 2**

**E-mail**

| From | To | Date | Subject line |
|---|---|---|---|
| Nancy Lai | Chris Rutten | 10/16/03 | Re: Information package |
| Nancy Lai | Chris Rutten | 11/05/03 | Re: Phone call (no attachment) |
| Nancy Lai | Chris Rutten | 11/05/03 | Re: Phone call (dividend scales attached) |
| Nancy Lai | Chris Rutten | 11/05/03 | Re: Phone call (policy forms attached) |
| Nancy Lai | Chris Rutten | 11/07/03 | Re: Phone call |
| Nancy Lai | Chris Rutten | 11/17/03 | Re: Due diligence |
| Nancy Lai | Chris Rutten | 11/19/03 | Re: Due diligence |
| Nancy Lai | Chris Rutten | 11/20/03 | Re: Question 7 |
| Nancy Lai | Art Palmer | 10/17/03 | Re: Information package |
| Nancy Lai | Art Palmer | 10/21/03 | Additional information |
| Diana Robinson | Chris Rutten | 11/19/03 | NCM September 30, 2003 qrtly statement |
| Cecilia Horton | Art Palmer | 11/06/03 | Re: NC Mutual -- Analysis of Ops by LOB |
| Cornelia Herring | Art Palmer | 11/20/03 | Re: PEVRESV |

Other

Hardcopies of various statutory financial statements, including 9/30/2003.

Attachment 3

Initial Trust Agreement