# First Amendment to Coinsurance Agreement
between

## North Carolina Mutual Life Insurance Company
and
## Port Royal Reassurance Company SPC, Limited
(as the assignee of Markel Bermuda Limited,
as the prior assignee of Alterra Bermuda Limited, as the prior assignee of Max Re Ltd.)

Whereas, Markel Bermuda Limited ("Markel Bermuda", as the successor by assignment from Alterra Bermuda Limited, as the successor by assignment from Max Re Ltd.) (the "Reinsurer") and North Carolina Mutual Life Insurance Company ("Cedent") entered into a certain Coinsurance Agreement dated as of the 19th day of December 2003 (the "Coinsurance Agreement"), and

Whereas, Markel Bermuda, the Cedent and Port Royal Reassurance Company SPC, Limited (the "Assuming Reinsurer") entered into a certain Novation Agreement dated as of the date hereof, whereby, the Assuming Reinsurer replaced Markel Bermuda as the Reinsurer under such Coinsurance Agreement (the "Novation Agreement"),

Whereas, the Assuming Reinsurer and the Cedent now desire to amend certain terms and conditions of the Coinsurance Agreement pursuant to this First Amendment to Coinsurance Agreement (the "Amendment") , effective as of April 24, 2015 ("the Amendment Effective Date"), and

Whereas, in connection with the Novation Agreement, the Cedent and Assuming Reinsurer entered into a certain reinsurance trust dated as of the date hereof, a copy of which is attached as hereto as Exhibit A (the "Trust Agreement").

Now, therefore, in consideration of the Novation Agreement the mutual agreements and covenants contained in this Amendment, both the Cedent and the Assuming Reinsurer hereby agree to the following:

1. <u>Amendments to Coinsurance Agreement.</u>

### *1.1 Recapture*

The "RECAPTURE" provision of the Coinsurance Agreement is hereby deleted in its entirety and replaced with the following new provision:

| | |
|---|---|
| RECAPTURE | After the 10 year anniversary of the Amendment Effective Date, Cedent shall have the right, but not the obligation, to recapture all |

**EXHIBIT 2**

the then in-force Covered Business reinsured with the Reinsurer under this Coinsurance Agreement in exchange for the cash payment by Cedent to the Reinsurer of an amount equal to the Actuarial Appraised Value, as of the effective date of such recapture, of the then in-force Covered Business, after giving consideration to the Experience Refund provision provided herein.

The "Actuarial Appraised Value" means, as of any date of determination, the appraised value of the Covered Business in-force on such date using the valuation methodologies and assumptions set forth on <u>Schedule A</u> attached to this Amendment. The calculation of the Actuarial Appraised Value of the Covered Business shall be prepared by an independent actuarial consulting firm mutually acceptable to Cedent and the Reinsurer.

### *1.2 Transfer*

The "TRANSFER" provision of the Coinsurance Agreement is hereby deleted in its entirety and replaced with the following:

> To the extent that Cedent does not comply with either (i) the service standards listed in Attachment 1, or (ii) its Reinsurance Reporting requirements, or (iii) any applicable laws, regulations and/or industry standards, then Reinsurer shall allow Cedent a 180-day remedy period following notification by Reinsurer before deciding whether to transfer the administration to a third party administrator assuming such non-compliance is not cured and is material in the Reinsurer's reasonable discretion as documented in writing by Reinsurer to Cedent. In the event Reinsurer decides to exercise its option to transfer the administration to a third party administrator, such replacement administrator shall be selected by Reinsurer at its sole discretion, and shall be appropriately licensed to perform its administrative obligations.

> Cedent shall cooperate in good faith with Reinsurer and its third party administrator to affect such administrative transfer. Reinsurer shall be liable for any fees charged by such third party administrator for the services provided hereunder, and Policy Allowances shall no longer be payable by Reinsurer to Cedent once the administrative services have been transferred, effective as the quarter-end of the date of transfer.

### 1.3 *Reinsurance Reporting*

The Coinsurance Agreement is hereby amended by deleting the second and third sentences of the "REINSURANCE REPORTING" provision in their entirety and replacing them with the following:

> Within five (5) business days after Reinsurer's receipt of each such Statement, the parties shall settle any amounts due from Reinsurer to Cedent or from Cedent to Reinsurer, as applicable, for the quarter pertaining to that Statement.

### 1.4 *Trust Agreement*

The "TRUST AGREEMENT" provision of the Coinsurance Agreement is hereby deleted in its entirety and replaced with the following:

| | |
|---|---|
| TRUST AGREEMENT | A copy of the Trust Agreement is set forth as Exhibit A hereto. |

### 1.5 *Collateral Trust Agreement*

The "COLLATERAL TRUST AGREEMENT" provision of the Coinsurance Agreement is hereby deleted in its entirety.

### 1.6 *Applicable Law*

The "APPLICABLE LAW" provision of the Coinsurance Agreement is hereby deleted in its entirety and replaced with the following:

ATL:1007175/00001:429753v7

| | |
|---|---|
| APPLICABLE LAW | This Coinsurance Agreement shall be governed by and construed in accordance with the laws of the state of North Carolina, without regard to and exclusive of the rules with respect to conflicts of law. |

## *1.7 Arbitration*

The "ARBITRATION" provision of the Coinsurance Agreement is hereby deleted in its entirety and replaced with the following:

| | |
|---|---|
| ARBITRATION | As a condition precedent to any right of action hereunder, any dispute or claim arising out of or relating to this Coinsurance Agreement, including its formation and validity, shall be referred to arbitration. Arbitration shall be initiated by the delivery, by mail, facsimile, or other reliable means, of a written demand for arbitration by one party to the other. The arbitration shall be held in Charlotte, North Carolina or such other place as the parties may mutually agree. |
| | Arbitration shall be conducted before a three person Arbitration Panel appointed as follows. Each party shall appoint one arbitrator, and the two arbitrators so appointed shall then appoint an impartial Umpire before proceeding. If either party fails to appoint an arbitrator within thirty (30) days after it receives a written request by the other party to do so, the other party may appoint an arbitrator for it. Should the two party-appointed arbitrators fail to choose an Umpire within thirty (30) days of the appointment of the second arbitrator, each arbitrator shall propose three names, of whom the other shall strike two and the decision shall be made from the remaining two by drawing lots. The arbitrators and Umpire shall be present or former executives or officers of life insurance or |

ATL:1007175/00001:429753v7

life reinsurance companies. The arbitrators and Umpire shall not be under the control of either party, and shall have no financial interest in the outcome of the arbitration.

The arbitrators and Umpire shall interpret this Coinsurance Agreement as an honorable engagement, and shall not be obligated to follow the strict rules of law or evidence. In making their award, they shall apply the custom and practice of the insurance and reinsurance industry, with a view to effecting the general purpose of this Coinsurance Agreement.

The decision of the majority of the Arbitration Panel shall be final and binding, except to the extent otherwise provided in the Federal Arbitration Act. The Arbitration Panel shall render its award in writing. Judgment upon the award may be entered in any court having jurisdiction, pursuant to the Federal Arbitration Act. Unless the Arbitration Panel orders otherwise, each party shall pay: (1) the fees and expenses of its own arbitrator; and (2) an equal share of the fees and expenses of the Umpire and of the other expenses of the arbitration.

### *1.8 Experience Refund Provision*

The Coinsurance Agreement is hereby amended to add the following new "EXPERIENCE REFUND" provision:

| | |
|---|---|
| EXPERIENCE REFUND | The Reinsurer shall pay Cedent an Experience Refund calculated on an inception to date basis and payable on a quarterly basis (an "Accounting Period") by Reinsurer to Cedent, with the inception date being the Amendment Effective Date. The term "Experience Refund" means an amount equal 2.5% of the net income earned with respect to the Covered Business during an Accounting Period calculated using the |

ATL:1007175/00001:429753v7

Case 1:22-cv-00501-LCB-JEP   Document 11-2   Filed 09/06/22   Page 5 of 15

statutory insurance accounting principles applicable to Cedent as follows:

(a) Reinsurance premiums ceded by Cedent to Reinsurer under this coinsurance Agreement during such Accounting Period; plus

(b) Investment income earned on the assets held in the Coinsurance Trust during such Accounting Period; minus

(c) Premium Allowance, Policy Allowance, Reserve Allowance paid by Reinsurer, and Reinsured Dividends applied by Cedent, during such Accounting Period; minus

(d) Benefits paid by Cedent with respect to the Covered Business during such Accounting Period; minus

(e) The excess of the statutory reserves of Cedent for the Covered Business as of the end of such Accounting Period over the statutory reserves of Cedent for the Covered Business as of the end of the immediately preceding Accounting Period; minus

(f) The amount of any unapplied, accumulated Loss Carry Forward as of the end of such Accounting Period.

The Experience Refund payable for an Accounting Period shall equal the Experience Refund less the sum of all previously paid Experience Refunds. If the Experience Refund for an Accounting Period is a positive amount, the Reinsurer shall pay Cedent such amount within

ATL:1007175/00001:429753v7

Case 1:22-cv-00501-LCB-JEP   Document 11-2   Filed 09/06/22   Page 6 of 15

thirty (30) days after the end of such Accounting Period. If the Experience Refund for an Accounting Period is a negative amount, then the absolute value of such amount shall be defined as a "Loss Carry Forward".

### 1.9 Reserve Credit

The "RESERVE CREDIT" provision of the Coinsurance Agreement is hereby deleted in its entirety and replaced with the following:

RESERVE CREDIT: Security for the Coinsured Reserves on the reinsurance provided to Cedent hereunder by Reinsurer will be in the form of assets valued according to their current fair market value and shall consist only of cash (United States legal tender), certificates of deposit (issued by a United States bank and payable in United States legal tender), or investments of the types permitted by G.S. 58, Article 7 or any combination of the above; provided that such investments are issued by an entity that is not the parent, subsidiary, or affiliate of either the Cedent or the Reinsurer. (the "Coinsurance Trust") in an amount not less than Cedent's statutory reserves for the Covered Business.

The assets held in the Coinsurance Trust shall satisfy the requirements for permitted investments under North Carolina General Statute 58-7-173 and the investment guidelines as contained in the Trust Agreement.

### 1.10 Representations and Warranties

The Coinsurance Agreement is hereby amended by deleting the second paragraph of the "REPRESENTATIONS AND WARRANTIES" provision thereof in its entirety and replacing it with the following:

REPRESENTATIONS    Reinsurer represents and warrants that (i)

7 | Page

ATL:1007175/00001:429753v7

Case 1:22-cv-00501-LCB-JEP   Document 11-2   Filed 09/06/22   Page 7 of 15

| AND WARRANTIES | Reinsurer is duly organized under the laws of the Cayman Islands, (ii) Reinsurer is authorized to enter into this Coinsurance Agreement, (iii) to Reinsurer's reasonable knowledge, this Coinsurance Agreement does not violate any law applicable to Reinsurer, and (iv) Reinsurer is solvent. |
|---|---|

### 1.11 *Covered Business Protection Covenant*

The Coinsurance Agreement is hereby amended by adding the following new "COVERED BUSINESS PROTECTION COVENANT" provision:

| COVERED BUSINESS PROTECTION COVENANT | Cedent shall, and shall cause its affiliates and its and their agents to, refrain, directly and indirectly, from knowingly taking any actions or failing to take any actions which could have an adverse or detrimental impact or effect on the Covered Business. |
|---|---|

### 1.12 *Notices*

The "NOTICES" provision of the Coinsurance Agreement is hereby deleted in its entirety and replaced with the following:

| NOTICES | All notices or communications hereunder shall be in writing and shall be deemed to have been received within three (3) Business Days after mailing by overnight delivery service or the next Business Day if by telefacsimile or by hand. Any written notice shall be by overnight delivery service (providing for delivery receipts), by telefacsimile (followed by telephone confirmation with the intended recipient) or delivery by hand.<br><br>All notices or communications with Cedent under the Coinsurance Agreement shall be addressed as follows:<br><br>North Carolina Mutual Life Insurance Company<br>411 West Chapel Hill Street |
|---|---|

ATL:1007175/00001:429753v7

Case 1:22-cv-00501-LCB-JEP   Document 11-2   Filed 09/06/22   Page 8 of 15

Durham, NC 27701-3616
Attention: James H. Speed, Jr.
Telephone: 919-682-9201

with a copy to:

North Carolina Mutual Life Insurance Company
411 West Chapel Hill Street
Durham, NC 27701-3616
Attention: Corporate Secretary
Telephone: 919-682-9201

All notices or communications with the Reinsurer under this Coinsurance Agreement shall be addressed as follows:

Port Royal Reassurance Company SPC, Limited
113 South Church Street
Grand Cayman, Cayman Islands
Attention: Paul Macey
Telephone: 877-483-1850 extension 2281

with a required copy (which shall not constitute notice to Reinsurer) to:

Forefront Capital Markets, LLC
Times Square Tower
7 Times Square, 37th Floor
New York, New York 10022
Attention: Michael Flatley
Telephone: 646-597-6068

### *1.13 Service of Suit*

The Coinsurance Agreement is hereby amended by deleting the third paragraph of the "SERVICE OF SUIT" provision thereof in its entirety and replacing it with the following paragraph:

| | |
|---|---|
| SERVICE OF SUIT | Reinsurer hereby designate the CT Corporation System at its offices in Charlotte, North Carolina as Reinsurer's true and lawful attorney upon which lawful process (or notice of arbitration) may be served in any action, suit or proceeding instituted on behalf of Cedent; provided that in the event that Cedent is unable |

ATL:1007175/00001:429753v7

Case 1:22-cv-00501-LCB-JEP   Document 11-2   Filed 09/06/22   Page 9 of 15

to serve process directed to reinsurer upon CT Corporation System at its Charlotte, North Carolina offices, Reinsurer hereby waives personal service of process or papers in connection with any action, suit or proceeding instituted on behalf of Cedent and agrees that such service may be made by overnight delivery service (providing for delivery receipt) at the address listed for Reinsurer under Notices herein.

2. <u>Miscellaneous.</u>

### *2.1 Cedent Representation*

As of February 28, 2015, other than claims related to the Covered Business provided for in Cedent's claim reserves, Cedent is not aware of any claims which could have been covered under the Coinsurance Agreement prior to entering into the Novation Agreement

### *2.2 Execution & Counterparts*

This Amendment may be executed by the parties hereto in any number of counterparts, and by each of the parties hereto in separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be original, but all such counterparts shall together constitute but one and the same instrument.

### *2.3 Amendments & Alterations*

Any term or condition of this Amendment may be waived at any time by the party that is entitled to the benefit thereof. Such waiver must be in writing and must be executed by an authorized officer of such party. A waiver on one occasion will not be deemed to be a waiver of the same or any other term or condition on a future occasion. This Amendment may be modified or amended only by a writing duly executed by an authorized officer of Cedent and Reinsurer respectively.

### *2.4 Entire Agreement*

This Amendment, including the Attachments thereto and together with the Coinsurance Agreement, constitutes the sole and entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof, which are merged with and into the Coinsurance Agreement as amended by this Amendment.

### *2.5 Effects on Coinsurance Agreement*

ATL:1007175/00001:429753v7

Except as specifically amended by this Amendment, all terms, conditions and provisions of the Coinsurance Agreement shall remain in full force and effect.

**IN WITNESS WHEREOF**, Cedent and Reinsurer have caused this First Amendment to Coinsurance Agreement to be executed and delivered by their duly authorized representatives as of April 24, 2015.

| Assuming Reinsurer: | Cedent: |
|---|---|
| **PORT ROYAL REASSURANCE COMPANY SPC, LIMITED** | **NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY** |
| By: *[signature]* | By: *[signature]* |
| Name: STEVEN W. FICKES | Name: James H. Speed Jr. |
| Title: _____ | Title: President & CEO |

ATL:1007175/00001:429753v7

EXHIBIT A

Copy of Trust Agreement

ATL:1007175/00001:429753v7

# *Schedule A*

# Actuarial Valuation Methodologies and Assumptions

*A. Actuarial Valuation Methodology*

On any date of determination the actuarial appraised value of the business reinsured will be determined based upon the actuarial valuation of the reinsured business as of such date.

The actuarial valuation is defined as the discounted value of the projected future cash flows from the business reinsured under the Coinsurance Agreement. Cash flows are defined as the projected distributable earnings, which are assumed to equal the projected net after tax earnings, determined under US statutory accounting practices ("SAP").

The cash flow projections will be developed separately for (i) premium paying business, (ii) paid-up business, and (iii) extended term insurance business.

1.) Premium Income

Premium Income, for the first projection year, will be projected based upon the prior year's actual premium income using assumptions as to mortality rates and lapse rates. In each subsequent projection year the projected premiums will be based upon the prior projection year's projected premium using assumptions as to mortality rates and lapse rates.

2.) Net Investment Income

Projected net investment income will be based on the projected average assets backing the reserves, which will be assumed to equal the average projected statutory reserves, multiplied by the assumed yield on such assets.

3.) Death Benefits

The projected death benefits will be based on the projected life insurance inforce times the assumed mortality rates.

4.) Surrender Values

Projected surrenders for each projection year will be based on the projected starting reserve multiplied by the assumed lapse rate and then adjusted for the ratio of the Cedent's total surrender benefits, for the business reinsured, to the total statutory reserves, for the business reinsured.

5.) Change in Reserves

The statutory reserves for each policy reinsured will be projected based on the plan of insurance and the reserving basis, as defined in the respective policy forms. In projecting the statutory reserves the same assumptions that were used to calculate projected death benefits and projected surrenders will be used.

ATL:1007175/00001:429753v7

Case 1:22-cv-00501-LCB-JEP   Document 11-2   Filed 09/06/22   Page 13 of 15

The change in reserves for any projection year, will equal the difference between the aggregate projected statutory reserves at the end of the projection year and the aggregate projected statutory reserves at the beginning of the projection year.

6.) General Expense (including taxes, licenses and fees)

The amount of general expenses assumed to be required to administer the business will be determined based upon expense assumptions applied to projected (i) premium income, (ii) life insurance inforce, and (iii) statutory reserves.

7.) Life Insurance Inforce

Life insurance inforce, for the first projection year, will be projected based upon the prior year's actual life insurance inforce using assumptions as to mortality rates and lapse rates. In each subsequent projection year the projected life insurance inforce will be based upon the prior projection year's projected life insurance inforce using assumptions as to mortality rates and lapse rates.

*B. Assumptions*

1.) Premium Income

The projected Premium Income for the first year of the projection will be based upon the prior year's actual premium.

2.) Lapse Rates

The assumed lapse rates used in the projection will be based on the lapses experience by the Cedent, on the premium paying business reinsured, during the five years prior to the valuation. A zero percent lapse assumption will be used for the extended term insurance and paid-up business.

An acceptable mortality assumption will validate within a range of 5% of the businesses' actual lapse experience in the year prior to the valuation year.

3.) Yield on Investments

The initial assumed yield on investments will be based on the prior year's actual yield for the portfolio of investments backing the statutory reserves.

The assumed yield on investments can be graded (on a linear basis) to a "new money yield" over the first ten years of the projection. Such new money yield will not be less than the average yield available for new investments in medium long-term corporate bonds at the time of the valuation.

4.) Mortality Rates

The assumed mortality rates used in the projection will be based on the mortality rates

ATL:1007175/00001:429753v7

Case 1:22-cv-00501-LCB-JEP Document 11-2 Filed 09/06/22 Page 14 of 15

experience by the Cedent on the business reinsured, during the five years prior to the valuation. Distinct mortality assumptions maybe made for the extended term insurance reinsured.

An acceptable mortality assumption will validate within a range of 5% of the businesses' actual mortality experience in the year prior to the valuation year.

5.) Surrender Values

Projected surrenders for each projection year will be based on the projected starting reserve multiplied by the assumed lapse rate and then adjusted for the ratio of the company's total surrender benefits, for all premium paying business reinsured, to the total statutory reserves, for all premium paying business reinsured.

6.) General Expense (including taxes, licenses and fees)

The projected expenses for the business reinsured will be based upon the expense allowances provide within the Coinsurance Agreement. These allowances are:

$19.00 per policy, for premium paying business
$ 4.00 per policy, for extended term insurance and paid-up business
3.50% of premium income
40 basis point on the average statutory reserves

No other expenses, including overhead or expenses for taxes, licenses and fees, shall be assumed.

7.) Life insurance inforce

The projected life insurance inforce for the first year of the projections will be based upon the prior year's actual life insurance inforce. Each subsequent projection year's life insurance inforce will be determined by multiplying the prior year's life insurance inforce by the quantity of 1 minus the assumed mortality rate and lapse rate.

8.) Discount rate

The discount rate used to determine the present value of future profits based upon the projected cash flows shall not be greater than the mid-point of the range of discount rates predominantly in use for the valuation of blocks of life insurance business being sold by life insurance companies not in distressed situations at the time of the valuation.

9.) Federal tax rate

The actuarial valuation of the business reinsured can be adjusted for U.S. federal income taxes, using a tax rate not exceeding the small life insurance company tax rate of 17%

15 | Page

ATL:1007175/00001:429753v7

Case 1:22-cv-00501-LCB-JEP   Document 11-2   Filed 09/06/22   Page 15 of 15