IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY, a North Carolina corporation, | )<br>)<br>) |
| Plaintiff, | ) CASE NO. 1:22-CV-501 |
| v. | ) |
| STEVEN FICKES, | ) |
| Defendant. | ) |

## RESPONSE IN OPPOSITION TO STEPHEN FICKES' MOTION TO DISMISS AND COMPEL ARBITRATION

Plaintiff North Carolina Mutual Life Insurance Company ("NC Mutual"), by counsel, states as follows in opposition to the Motion to Dismiss and Compel Arbitration filed by Defendant Steven Fickes ("Fickes") (ECF No. 11).

## INTRODUCTION

NC Mutual has suffered over $20 million in damages as a result of Fickes' actions. The Complaint (ECF No. 1) against Fickes alleges claims for fraud, negligent misrepresentation, violations of the federal and state RICO Acts, unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, and civil conspiracy. Fickes seeks dismissal and an order compelling arbitration of these claims based on an arbitration clause contained in an amendment (the "Amendment") to the co-insurance agreement between Fickes' company, Port Royal Reassurance Company SPC., LTD. ("Port Royal"), and NC Mutual (the "Co-insurance Agreement").

NC Mutual brings this case against Fickes in his individual capacity, and Fickes admits he personally is *not* a signatory to the Coinsurance Agreement or any other applicable agreement to arbitrate. Notwithstanding his status as a non-signatory and the parties' disagreement about the scope of the arbitration clause—NC Mutual consents to arbitrate this dispute in the interest of judicial economy, provided that the Court *stay*, rather than dismiss, this case pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3.

The plain language of the FAA and this Court's prior ruling compelling NC Mutual to arbitrate its claims against Port Royal make clear that a stay—not dismissal—is appropriate here. In April 2020, this Court stayed NC Mutual's claims against Port Royal in the related Case No. 1:16cv1174, and the same result should obtain in this case. Despite NC Mutual's willingness to arbitrate, Fickes refuses to consent to a stay. Accordingly, for the reasons set forth in more detail below, NC Mutual respectfully requests that the Court deny Fickes' Motion in part, enter an order compelling the parties to arbitrate NC Mutual's claims, and stay this matter pending the outcome of any arbitration proceedings.

## QUESTION PRESENTED

1. Whether the Court should stay or dismiss this action under FAA, 9 U.S.C. § 3.[1]

## BACKGROUND

NC Mutual and Markel Bermuda, Limited ("Markel") are the original parties to the Coinsurance Agreement, (Compl. ¶ 9), under which NC Mutual agreed to cede Markel

---

[1] Because NC Mutual consents to arbitrate all claims alleged in the Complaint, the Court need not reach the issue whether Fickes can enforce the clause as a non-signatory. (*See* Fickes' Mem. in Supp. of Mot. to Compel (ECF No. 11) (hereinafter "Fickes' Mot.") at 5.)

certain liabilities and obligations, and NC Mutual earned approximately $700,000 annually for servicing the ceded policies. (*Id.* ¶ 9.) In 2014, NC Mutual's then-CEO, James Speed ("Speed"), contacted Fickes to assist with securing a reinsurer and investment advisor, and terminating or transferring agreements with and services provided by Markel. (*Id.* ¶ 11.)

Fickes previously served as an actuary and consultant for NC Mutual. (*Id.* ¶ 12.) He established Port Royal for the purpose of replacing Markel as the reinsurer and entering various agreements with NC Mutual. (*Id.* ¶ 15.) Fickes also introduced Speed to Forefront Partners, LLC ("Forefront") and its members, Bradley Reifler ("Reifler") and Michael Flatley ("Flatley"). (*Id.* ¶ 14.)

In April 2015, Port Royal and NC Mutual entered a Novation Agreement under which Port Royal accepted and reinsured one hundred percent of risks, liabilities, and obligations associated with certain NC Mutual life insurance policies and annuity contracts. (*Id.* ¶ 16.) The Novation Agreement also required NC Mutual, Port Royal, and Summit Trust Company ("Summit") to execute a Reinsurance Trust Agreement (the "Trust Agreement"), under which Markel—on behalf of Port Royal as "grantor"—deposited approximately $34 million in NC Mutual reserves into a trust account. (*Id.* ¶ 19.) Summit was the trustee, and NC Mutual is the beneficiary.[2] (*Id.* ¶¶ 26-28.) Port Royal also serves as reinsurer for the trust account. (*Id.*)

Markel received a $5,000,000 commission under the Novation Agreement, and Port Royal was required to replenish the reserves. (*Id.* ¶ 22.) Port Royal engaged Forefront

---

[2] On May 24, 2017 U.S. Bank National Association replaced Summit as trustee pursuant to an Insurance Trust Agreement.

Capital Holdings, LLC ("Forefront Capital Holdings"), a company affiliated with Forefront and Reifler, to fund the $5,000,000 shortfall. (*Id.* ¶ 23.) Port Royal also appointed Stamford Brook Capital, LLC ("Stamford Brook")—an entity created by Reifler—as an investment manager. (*Id.* ¶ 32.) Port Royal and Stamford Brook executed an Investment Advisory Agreement that governed management of the trust assets.

Fickes failed to exercise proper due diligence in vetting and appointing Stamford Brook as an investment manager and failed to disclose shared interpersonal relationships and ownership interests among Forefront, Forefront Capital Holdings, Stamford Brook, and related entities.[3] NC Mutual eventually discovered that Fickes, Reifler, Flatley, and the Forefront Entities engaged in a scheme to gain control over the trust assets and transfer them into investments designed to benefit these individuals and the entities they controlled. (*Id*. ¶¶ 39-64.) Indeed, virtually *all* of the cash held in NC Mutual's trust was improperly invested in assets linked directly or indirectly to the Forefront Entities. (*Id.* ¶¶ 65-78.)

Fickes *knew* about the mismanagement of NC Mutual's trust assets and multiple transactions that violated the terms of the Trust Agreement, the Investment Advisory Agreement, as well as state and federal law. (*Id.* ¶¶ 79-103.) Rather than disclose these activities to NC Mutual, Fickes attempted to conceal the nature of the improper investments. (*Id.*) When NC Mutual conducted an internal audit of the trust assets in 2016, it began to uncover the mismanagement of the trust assets and Fickes' involvement. (*Id.* ¶¶

---

[3] In addition to Forefront, Forefront Capital Holdings, and Stamford Brook, Reifler held an ownership interest in Forefront Capital Services and Forefront Partners Short Term Notes, LLC. Collectively, these entities are the "Forefront Entities," collectively. (Compl. ¶¶ 23-24.)

104-121.) NC mutual also eventually discovered that Fickes exercised complete control over Port Royal, failed to observe proper corporate formalities, and operated the company in a manner that rendered Port Royal a mere instrumentality and alter ego of Fickes. (*Id.* ¶¶ 37-38.)

An independent audit conducted in 2017 revealed that NC Mutual did not have sufficient funds to cover the total amount of insurance in force with Port Royal as of December 31, 2016 (over $51 million). As a direct and proximate result of Fickes' conduct, NC Mutual had to record an approximate $27 million liability, lost over $20 million in trust assets, and became insolvent because it was out of compliance with the North Carolina minimum capital. (*Id.* ¶¶ 122-26.) In September 2021, the Commissioner of Insurance of North Carolina instituted liquidation proceedings against NC Mutual in the North Carolina General Court of Justice, Superior Court Division. *See* **Ex. A** (Verified Petition for an Order of Liquidation).

**Related Litigation Against Port Royal**

NC Mutual brought suit against Port Royal, the Forefront Entities, Reifler, Flatley, and others in 2016. (*See N. Carolina Mut. Life Ins. Co. v. Stamford Brook Cap.*, *LLC,* Case No. 1:16cv1174, Compl. (ECF No. 1).) NC Mutual did not pursue any action against Fickes at that time. In December 2019, Port Royal filed a motion to compel arbitration based on an arbitration clause in the Amendment to the Co-Insurance Agreement. (*Id.* (ECF No. 191).) The clause requires the parties to arbitrate "any dispute arising out of or relating to" the Co-insurance Agreement. (ECF No. 11-2 (First Amendment to Co-insurance Agreement).) The Amendment also contained a merger clause, stating that "the

5

Attachments thereto and . . . the [Co-]insurance Agreement, [and the Amendment] constitutes the sole and entire agreement between the parties . . . ." (*Id.*)

In April 2020, the Court granted Port Royal's motion, finding that "when the parties executed the Amendment, their intent was to 'roll up' several separate agreements—namely, the Coinsurance Agreement, the Trust Agreement, and the Novation Agreement—into one integrated contract." *N. Carolina Mut. Life Ins. Co. v. Stamford Brook Cap.*, LLC, No. 1:16CV1174, 2020 WL 1820760, at *3 (M.D.N.C. Apr. 10, 2020). The Court further found that NC Mutual's claims against Port Royal relating to the Trust Agreement fell under the broader Coinsurance Agreement and, thus, within the scope of the arbitration clause in the Amendment. *Id.* Accordingly, the Court compelled NC Mutual and Port Royal to arbitration and ***stayed*** the action. *Id.* at *5.[4]

**NC Mutual files a New Lawsuit, Fickes Moves to Compel Arbitration**

NC Mutual filed suit against Fickes in his individual capacity in June 2022, seeking to pierce the corporate veil of Port Royal and hold Fickes liable for various violations of state and federal law. On September 9, 2022, Fickes moved to dismiss the Complaint and compel arbitration. (ECF Nos. 10-11.) Counsel for the parties conferred and, for the reasons

---

[4] Fickes points out that NC Mutual has not yet initiated arbitration proceedings against Port Royal. (Fickes' Mot. at 4-5.) As noted in NC Mutual's January 2021 status report, the parties were considering whether to move forward with arbitration, particularly in light of Reifler's indictment in this District, arising from the same nucleus of facts at issue in the litigation against Port Royal and the arbitration. (*See N. Carolina Mut. Life Ins. Co.*, Case No. 1:16cv1174, Rep't on Arb. (ECF No. 237) ¶ 3l.) The Court stayed the entire case in August 2021 pending resolution of Reifler's criminal proceedings. (*See id.*, Aug. 26, 2021 Text Order.) Moreover, during this time, Fickes has had equal opportunity to initiate arbitration proceedings on behalf of Port Royal, his alter ego.

6

discussed herein, NC Mutual consents to arbitrate the claims against Fickes, provided that the Court *stay*—rather than dismiss—the lawsuit. Fickes refuses to consent to a stay.

## ARGUMENT

The Court should stay, rather than dismiss, the Complaint in accordance with the requirements of the FAA's express terms. "When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA *requires* federal courts to stay judicial proceedings" *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002) (citing 9 U.S.C. § 3 (providing that the court "*shall* . . . stay the trial of the action" (emphasis added))). "This stay-of-litigation provision is mandatory." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002).

Notwithstanding the clear mandate of § 3 of the FAA, the Fourth Circuit has suggested that dismissal is a proper remedy when all issues presented are arbitrable. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001).[5] But this language from *Choice Hotels* is *dicta*, and multiple courts have declined to follow it

---

[5] NC Mutual rejects Fickes' contention that the arbitration clause covers *all* claims alleged in the Complaint for two key reasons. First, the Co-insurance Agreement provides: "[I]n the event of the failure of Reinsurer hereon to pay any amount claimed to be due hereunder, [Port Royal], at the request of [NC Mutual], **will submit to the jurisdiction of a Court of competent jurisdiction within the United States**." (ECF No. 11-2 at 13 (emphasis added).) Certain claims against Fickes fall squarely within this provision. Second, NC Mutual's claims relate largely to Fickes' improper management of Port Royal, his dealings with the Forefront Entities, Reifler, and Flatley (who are not parties to the Co-Insurance Agreement), and the Investment Advisory Agreement (which is not one of the agreements the Court listed as "roll[ed] up" in the merger clause). *See N. Carolina Mut. Life Ins. Co.,* 2020 WL 1820760, at *3. Nevertheless, given this Court's previous ruling regarding the scope of the arbitration clause and the effect of the merger clause, and to save costs associated with further litigating those issues, NC Mutual agrees to arbitrate all claims in the Complaint.

7

as such. *See Hodge v. Toyota Motor Credit Corp.*, 2022 WL 2195022, at *7 n.4 (W.D.N.C. June 17, 2022) (staying proceedings, noting *Choice Hotels* language is *dicta*, and following plain language of § 3 based on *Murray*, 289 F.3d at 301); *Woodis v. UnitedHealth Grp., Inc.*, 2021 WL 5893681, at *1 n.1 (W.D.N.C. Dec. 13, 2021) ("In the absence of clear guidance from the Fourth Circuit regarding the appropriateness of a dismissal, the Court will follow the plain language of § 3 and stay the action."); *Foster v. Carrols Corp.*, 2018 WL 700806, at *3 n.3 (W.D.N.C. Feb. 2, 2018) (same); *Blount v. Northrup Grumman Info. Tech. Overseas, Inc.*, 2014 WL 5149704, at *5 (E.D. Va. Oct. 14, 2014) (same); *Green v. Zachry Indus., Inc.*, 36 F. Supp. 3d 669, 678 (W.D. Va. 2014) (staying action pending arbitration pursuant to "express requirement" of § 3 of FAA in light of "uncertainty" on whether district court had discretion to dismiss rather than stay and arbitration).

In addition to the clear language of § 3, this Court's prior ruling on Port Royal's motion to compel, NC Mutual's liquidation proceedings, and judicial economy weigh in favor of staying this matter. First, Fickes' motion to compel is based exclusively on an arbitration clause contained in an agreement to which Port Royal—not Fickes—is a party. Based on that clause, this Court previously compelled NC Mutual to arbitrate its claims against Port Royal and *stayed* the litigation as to Port Royal. *See N. Carolina Mut. Life Ins. Co.*, 2020 WL 1820760, at *5. Fickes' motion presents no compelling reason for this Court to deviate from its prior decision to stay.

Next, NC Mutual's liquidation proceedings may affect its ability to reinitiate a lawsuit in the future. Since the Court stayed NC Mutual's litigation against Port Royal, the Commissioner of Insurance of North Carolina has instituted liquidation proceedings

8

against NC Mutual in the North Carolina General Court of Justice, Superior Court Division. (*See* **Ex. A**.) These liquidation proceedings and uncertainty surrounding NC Mutual's future may hinder its ability to reinstitute litigation at a later time if the Court dismisses the action. *See Harvey v. Darden Rest., Inc.*, 2015 WL 1474946, at *3 (M.D.N.C. Mar. 31, 2015), *report and recommendation adopted*, 2015 WL 2381176 (M.D.N.C. May 18, 2015) ("Given the clear statutory authority providing for a stay . . . , . the Court concludes that staying this action pending arbitration would be the more prudent course of action and would provide for greater efficiency should further disputes arise that require the Court's attention."). Thus, NC Mutual's corporate status presents yet another reason to stay, rather than dismiss, this matter.

Lastly, the parties' resources and judicial economy are best conserved by arbitrating the claims against Fickes together with NC Mutual's claims against Port Royal. Once an arbitration award is issued, the prevailing party will come back to this Court seeking enforcement of that award. Thus, the parties' resources and judicial economy are best served by leaving this matter in place pending the arbitration's outcome. It makes no sense to dismiss this action because doing so will ultimately require either party to initiate yet another new action related to the arbitration decision.

9

## CONCLUSION

For the reasons stated above, NC Mutual respectfully requests that the Court deny Fickes' Motion in part, compel the parties to arbitrate, stay this matter pending resolution of the arbitration, and grant such further relief as the Court deems just and proper.

Respectfully submitted this the 27th day of September, 2022.

WILLIAMS MULLEN

/s/ *M. Keith Kapp*
M. Keith Kapp (N.C. Bar # 8850)
Wes J. Camden (N.C. Bar # 33190)
Lauren Fussell (N.C. Bar # 49215)
P.O. Box 1000
Raleigh, North Carolina 27602
Telephone: (919) 981 4000
Facsimile: (919) 981 4300
kkapp@williamsmullen.com
wcamden@williamsmullen.com
lfussell@williamsmullen.com
*Attorneys for Plaintiff*

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying brief contains 2,548 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 6,250-word limitation.

This the 27th day of September, 2022.

        WILLIAMS MULLEN

        /s/ *M. Keith Kapp*
        M. Keith Kapp (N.C. Bar #8850)
        P.O. Box 1000
        Raleigh, North Carolina 27602
        Telephone: (919) 981-4000
        Facsimile: (919) 981-4300
        kkapp@williamsmullen.com
        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of September, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record and parties that have made an appearance in this civil action.

                    WILLIAMS MULLEN

                    /s/ *M. Keith Kapp*
                    M. Keith Kapp (N.C. Bar #8850)
                    P.O. Box 1000
                    Raleigh, North Carolina 27602
                    Telephone: (919) 981-4000
                    Facsimile: (919) 981-4300
                    Email: kkapp@williamsmullen.com
                    *Attorneys for Plaintiff*